12  217
a110 676

No. 39.—OSCAR J. H. DIBBLE, plaintiff in error, *vs.* BROWN &
HARRIS, defendants.

[1.] Delivery of the goods must be proved, in order to charge a common
carrier for their loss. It is a fact for the Jury to determine, and if there
is any evidence of delivery, the case will go to the Jury on that fact.

[2.] The evidence of the plaintiff, in an action to charge a common carrier
for the loss of a trunk, to prove its contents, is, in no case, admissible, if
there is other evidence attainable to prove it. If there is none, and it is
proven that the defendant has committed spoliation upon the property,
then the evidence of the plaintiff is admissible *in odium spoliatoris.*

[3.] A party is also admissible to prove the contents of a trunk, when no
other evidence is attainable, upon a policy *in favorem justitiæ,* springing
out of the necessity of the case and the nature of the subject.

[4.] Railroad companies, stage proprietors, steamboat owners, and omnibus
proprietors, who carry passengers for hire, as regards the passengers'
baggage, are like common carriers, liable for its loss, unless caused by the
act of God or the public enemy.

[5.] Merchandize transported for sale, large sums of money, and samples of
merchandize, are not comprehended in the term baggage.

[6.] By baggage is understood such articles of necessity or personal conveni-
ence, as are usually carried by passengers, for their personal use. What

articles are usually carried by ·passengers, is a question to be left to the Jury, under the direction of the Court, upon a consideration of the condition in life of the traveller; his habits, vocation and tastes; the length of his journey, and whether he travels alone, or with his family; and of the usage of the time and place, and all the circumstances of each case.

[7.] If proprietors of railroads, steamboats, stage coaches and omnibuses, &c., who are engaged in the business of transporting passengers, holding themselves out to the world as persons exercising a public employment, and as being ready to carry goods for hire; if they receive goods or extra baggage, to be carried for compensation, they are, as to such extra baggage and goods, liable as common carriers.

Case, in Bibb Superior Court. Tried before Judge Pow-ERS. June Term, 1852.

This was an action to recover the value of a trunk of plaintiff, which was alleged to have been lost by the default of defendants, as omnibus proprietors, in the City of Macon.

The interrogatories of Mrs. Margaret Dibble, the wife of plaintiff, were offered to prove the contents of the trunk, (the loss of it having been previously proven by other witnesses) which were objected to by defendants.

The Court sustained the objection; holding that the witness was not competent to testify.

The Jury having found for defendants, plaintiff's counsel excepted to said decision of the Court.

DeGraffenried, Hall & Hall, for plaintiff in error.

Poe, Nisbet & Poe, for defendants.

*By the Court.*—Nisbet, J. delivering the opinion.

This action was brought to recover the value of a trunk and its contents, from the defendants, as common carriers. The defendants were proprietors of an omnibus, running from their ·hotel, in the city of Macon. The trunk was placed in charge of the plaintiff's son, a youth about fourteen years old, at Columbus, and taken with him, as baggage, on coaches running

from that city to Macon.   At Macon, he stayed a night at the defendants' house, and passed from thence in their omnibus, the next morning, to the Central Railroad depot.   This baggage, including the lost trunk, was received by the defendants, at their hotel, and brought out by their servants, to be sent to the depot with him.   Upon arriving at the depot, it was found not to be with the baggage, and was finally lost.   Having proven that the trunk belonged to him, and also its loss, and the facts above stated, the plaintiff offered to read the testimony of Mrs. Margaret Dibble, his wife, taken by commission, to prove that she packed the trunk—what were its contents, and their value. The defendants objected to the reading of her testimony, upon three grounds :

*First*—Because the plaintiff had not proved that the trunk had been delivered into the possession of the defendants.

*Second*—Because the articles contained in the bill of parcels annexed to the declaration, and which the evidence was offered to show were in the trunk, were merchandize, and not such articles of necessity and convenience as travellers are accustomed to take with them, and for the loss of which alone, the defendants are by law liable.

*Third*—Because the evidence of a party to prove the contents of a trunk, in an action to charge a common carrier for its loss, is admissible only in case of spoliation being committed on the property of the plaintiff, by the carrier, and as no spoliation was proven to have been committed by the defendants, the evidence was inadmissible.

Upon these grounds, the testimony was rejected, and they make the points brought up for review.

No objection was made to the evidence, upon the score of Mrs. Dibble being the plaintiff's wife.   The plaintiff in error in the record, and counsel on both sides, in the argument, treated the case as if the plaintiff in the action had himself been offered to prove the contents of the trunk, and their value.   The general rule is, that a wife is not a competent witness, in a suit where her husband is a party, for reasons which grow out of the relation of husband and wife.   Her competency, in this case,

depends upon those principles which, in like cases, would make her husband, who is the party plaintiff in the action, himself a witness, to make out his case. We shall find that his competency, in just such a case as this, grows out of an overruling necessity. So hers. Without further remark upon the character of the witness, as the wife of the plaintiff, than that we considered her as not excepted to, on the ground of that relation, I proceed to notice the three grounds of incompetency, taken in the bill of exceptions, and stated above, as I find them there stated.

[1.] The first is easily disposed of. If there was no delivery of the trunk to the defendants; if it is not proven to have come into their possession, there can be no recovery for the plaintiff. Reception of the trunk, as baggage, lies at the foundation of the plaintiff's right of action. Whilst this is true, I do not see what it has to do with the competency of Mrs. Dibble. If her testimony is admitted, and no delivery is proven, it goes for nothing; for in that event it would be the duty of the Court to instruct the Jury that the plaintiff could not recover. Indeed if that is not proven, no matter what else is proven, the plaintiff has not made out his case, and would be non-suited. Again, there is no room for considering this question. The fact of delivery is for the Jury to determine, if there is any evidence going to prove it. There is, in the record, evidence of delivery. It is proven that the defendants were the proprietors of the Washington Hall Hotel, where young Dibble stopped, and, that in that character they received both him and his baggage, including the trunk; and it is also proven that they were proprietors of the omnibus which conveyed him to the Central Railroad depot, from their door. And it is further proven, that the trunk, at the time when he entered the omnibus, was present in the hands of one of the servants waiting at their Hotel; and also, that he, (young Dibble,) informed the servant that it was to go with him to the depot. I will not say that this testimony is positive demonstration that, in their character as proprietors of the omnibus, the trunk came into their hands; for it is not necessary so to say; but I will say that it is evidence going to show that they received it, and that is all that is necessary for

my purpose. It was quite sufficient to carry the case to the Jury, on the fact of delivery. If so, we are not at liberty to inquire whether proof of delivery was first necessary to be made, in order to the admissibility of Mrs. Dibble's testimony. The proof was made, and that is an end to this objection.

[2.] The *third* ground of objection, which I next notice, because more appropriate to this stage in the argument, is that the exception upon which the evidence of the plaintiff is admissible, to prove the contents of a trunk, in an action to charge a carrier for its loss, extends to cases only, where the carrier is proven to have been guilty of some fraud or other tortions and unwarrantable act of intermeddling with the plaintiff's goods, and is then only admissible, when there is no other evidence to prove the damage. In no case is it admissible, if there is other evidence of the damage, at the command of the plaintiff. If there is none, then it is true, that the spoliation being proved, the evidence of the party is admissible, *in odium spoliatoris.* This rule is fully illustrated in the case of *Herman vs. Drinkwater.* There, a ship-master received on board of his vessel, a trunk of goods, to be carried to another port. On the passage, he broke open the trunk and rifled it of its contents, and in an action, by the owner of the goods, the plaintiff having proved, *aliunde,* the delivery of the trunk and its violation, was held competent to testify to the contents of the trunk. 1 *Greenleaf's R.* 27. *Childreps vs. Saxly,* 1 *Vern.* 207. 1 *Eq. Cas. Ab.* 229, *S. C. Tait on Ev.* 280. 1 *Greenleaf's Ev.* §348.

[3.] The principle upon which the rule goes, has been extended to the case of bailors, who have been permitted, in suits brought by themselves, for the contents of trunks lost by the *negligence* of bailees, to prove their contents. *Clark vs. Spence,* 10 *Watts' R.* 335. *Greenleaf's Ev.* §348. In such cases, growing out of the negligence of bailees, the idea of spoliation is excluded. Whilst, then, it is true, that because of the abhorrence which the law has for acts of spoliation, the evidence of a party is admissible in his own case; yet, it is true that there are other cases where, upon other grounds, a party may also testify.

" The oath *in litem*, says Prof. *Greenleaf*, is admitted, in two classes of cases.    *First*—Where it has been already proved that the party against whom it is offered, has been guilty of some fraud, or other tortious and unwarrantable act of inter-meddling with the complainant's goods, and no other evidence can be had of the amount of damages ; and, *secondly*, where, on general grounds of public policy, it is deemed essential to the purposes of justice."    *Greenleaf's Ev.* 1 *vol.* §348.    Again, in speaking of the admissibility of a bailor, suing for the value of goods lost by the negligence of the bailee, the same learned wri-ter says: " Such evidence is admitted, *not solely* on the ground of the just odium entertained, both in Equity and at Law, against spoliation ; but also because, from the necessity of the case, and the nature of the subject, no proof can otherwise be expected—it not being usual even for the most prudent persons, in such ca-ses, to exhibit the contents of their trunks to strangers, or to provide other evidence of their value.    For where the law can have no force, but by the evidence of the person interested, there the rules of the Common Law, respecting evidence in general, are presumed to be laid aside; or rather the subordinate are silenced by the most transcendant and universal rule ; that in all cases, that evidence is good, than which the nature of the subject presumes none better to be attainable."    *Greenleaf's Ev.* 1 *vol.* §348.    The necessity of the case and the nature of the sub-ject, are, therefore, grounds upon which the evidence of a bail-or who is a party, may be admitted, to prove the contents of a lost trunk.    Upon these grounds, we rule that the evidence in this case ought to have been admitted.    This rule received an enlightened exposition in the case before referred to, of *Clark vs. Spence,* 10 *Watts,* 335.    In that case, Judge *Rogers* remarks : "A party is not competent to testify in his own case, but, like every other general rule, this has exceptions.    Necessity, either physical or moral, dispenses with the ordinary rules of evi-dence."

In 12 *Vin.* 24, *Pl.* 32, it is laid down, that on a trial at *Bod-neys coram Montague B.* against a common carrier, a question arose about the things in a box, and he declared that this was

one of those cases where the party himself might be a witness, *ex necessitate rei.* For every one did not show what he put in his box. The same principle is recognized in decisions on the Statute of *Hue and Cry,* in England, where a party robbed is admitted, *ex necessitate.* That a party then, can be admitted, under certain circumstances, to prove the contents of a box or trunk, must be admitted, &c." I then assume, upon authority, that the party's admissibility does not depend upon the fact of spoliation alone, but that he is admissible to prove the contents of a trunk, when no other evidence is attainable, upon the ground of a policy *in favorem justitiæ,* springing out of the necessity of the case and the nature of the subject. Equally is the assumption sustainable upon principle; for, as argued by *Greenleaf,* all subordinate rules of evidence, are silenced by that universal and transcendant rule, that that evidence in all cases is good, than which the nature of the subject presumes none better to be attainable. Justice has her necessities, one of which is, that wrong must be prevented, even by overriding rules of evidence, which are ordinarily not only salutary, but indispensable. The rule is applicable to this case. It is not pretended that there is any evidence attainable, to prove the contents of this trunk, but that of Mrs. Dibble. She packed it, and she alone knew its contents. The necessity of her admission, then, is found in the fact which clearly appears on the face of this record, that if she is excluded, the plaintiff loses his rights. The reason of the rule is fortified by a consideration of the confidence and trust which the public are obliged to repose in carriers, and the facility with which that confidence may be abused. *Lane vs. Colton,* 1 *Viner Abr.* 219.

[4.] The second ground of objection to Mrs. Dibble's testimony involves a question of some difficulty and of great practical importance; and it is this, to wit: how far the rule admitting the evidence of a party, is limited by that kind of liability which the law has imposed upon stage contractors, railroad companies, omnibus proprietors, and others who carry passengers, for the loss of their baggage. The point, then, resolves itself into the inquiry—For what articles in a trunk, accompanying a

traveller as baggage, is the carrier liable? The question is mooted in the books, whether such persons, as regards baggage accompanying travellers, are liable, as common carriers, or as private persons engaging to carry for hire. If the former, they are liable, as insurers against loss, except when occasioned by the act of God and the public enemies; and if the latter, they are bound only to due and reasonable skill and diligence in their undertaking.

It is, however, now well settled, that they are liable for baggage, as common carriers. Without other compensation than the fare for passengers, they are liable for their baggage, as common carriers are liable for goods delivered to them for transportation; that is, they are liable for baggage at all events, except when destroyed by the act of God, or irresistible accident, and the public enemies. *Brook vs. Pickwick,* 4 *Bing.* 218, 222. *Christie vs. Griggs,* 2 *Camp. R.* 86. *Allen vs. Sewell,* 2 *Wend. R.* 327, 341. *S. C.* 6 *Wend.* 335. *Clark vs. Gray,* 6 *East.* 564. 13 *Wend.* 611, 627, 628. 9 *Ibid,* 85, 114 *to* 119. 19 *Ibid,* 234. 2 *Kent's Com.* 600, 601, 4*th edition.* 1 *Bell's Com.* 467, 468, 475, 8*th edition. Story on Bail,* 511.

[5.] It remains, however, to inquire, what is to be understood by baggage, for which they are thus liable? And we are not guided, in this inquiry, by adjudications which settle a definite rule of universal application. From their usual course of business, when they carry a passenger, a contract is implied to carry also his baggage. They are presumed to be compensated in the fare for his transportion, and I can very well believe, well compensated, because the amount of travel is greatly increased by the comfort and convenience of carrying baggage, and would be lessened, if, for his baggage, a passenger was required to pay freight. It is curious to remark, as I do, *en passant,* that the law takes more care of a man's luggage, than it does of his life and limbs; for the former, the carrier is liable as insurer against loss, except by the act of God and the public enemies; for the safety of the latter, he is bound only to extraordinary care and diligence. But to return: to what articles, under the denomination of baggage, does this implied contract extend?

Dibble *vs.* Brown and another.

[6.] Judge *Story* informs us that "by baggage, we are to understand such articles of necessity or personal convenience as are usually carried by passengers for their personal use, and not merchandize or other valuables, although carried in the trunks of passengers, which are not designed for any such use, but for other purposes, such as a sale and the like." *Story on Bail.* §499. In *Orange County Bank vs. Brown, Judge Nelson* says, "a reasonable amount of baggage, by custom or the courtesy of the carrier, is considered as included in the fare for the person; but Courts ought not to permit this gratuity or custom to be abused, and under pretence of baggage, to include articles not within the sense or meaning of the term, or within the object or intent of the indulgence of the carrier, and thereby defraud him of his just compensation, and subject him to unknown and illimitable hazards." 9 *Wend.* 115, 116. In *Hawkins vs. Hoffman, Bronson J.* says: "An agreement to carry ordinary baggage may well be implied from the usual course of business; but the implication cannot be extended a single step beyond such things as the traveller usually has with him as part of his luggage. It is doubtless difficult to define, with accuracy, what shall be deemed baggage, within the rule of the carrier's liability. I do not intend to say, that the articles must be such as every man deems essential to his comfort; for some men may carry nothing, or very little with them, when they travel, whilst others consult their convenience by carrying many things. Nor do I mean to say that the rule is confined to wearing apparel, brushes, razors, writing apparatus and the like, which most persons deem indispensable. If one has books for his instruction or amusement, by the way, or carries his gun or fishing tackle, they would undoubtedly fall within the term baggage, because they are usually carried as such. This is, I think, a good test for determining what things fall within the rule." 6 *Hill's N. Y. R.* 589, 590.

It has been decided that, under the term baggage, merchandize, as silks or other fine articles, are not embraced; (25 *Wend.* 458); nor large sums of money, (9 *Wend.* 85); nor samples of merchandize, (6 *Hill's N. Y. R.* 586.) A watch is embraced,

according to the Ohio Courts. 10 *Ohio R.* 145. So far as these rulings go, the doctrine may be considered as settled, and it must be considered as settled in all cases falling within the reason of those rulings. When, however, all this is done, the subject is disencumbered of but little of the difficulty which environs it. Nor does the text of *Story*, or the opinions of Judges *Nelson* and *Bronson* relieve it of embarrassment. When we settle down with Judge *Story* upon the proposition that, by *baggage*, is to be understood "such articles of necessity or personal convenience as are usually carried by passengers, for their personal use," we are still without a rule for determining what articles are included in baggage. For such things as would be necessary to one man, would not be necessary to another; articles which would be held but ordinary conveniences by A, might be considered incumbrances by B. One man, from choice, or habit, or from educational incapacity to appreciate the comforts or conveniences of life, needs perhaps a *port manteau*, a change of linen, and an indifferent razor; whilst another, from habit, position and education, is unhappy without all the appliances of comfort which surround him at home. The quantity and character of baggage must depend very much upon the condition in life of the traveller—his calling, his habits, his tastes, the length or shortness of his journey, and whether he travels alone, or with a family. If we agree further with Judge *Story*, and say that the articles of necessity or of convenience must be such as are *usually* carried by travellers for their personal use, we are still at fault, because there is in no State of this Union, nor in any part of any one State, any settled usage, as to the baggage which travelleers carry with them for their personal use. The quantity and character of baggage found to accompany passengers, are as various as are the countenances of the travellers.

The negative part of Judge *Story's* definition, with more precision, furnishes a rule *pro tanto*. Baggage, he says, does not embrace merchandize, or other valuables not designed for personal use, but which are designed for other purposes, such as a sale or the like. We may safely say, that it does not embrace merchandize or other articles which are intended to be sold.

Dibble *vs.* Brown and another.

But it is not to be understood, I apprehend, that no article is embraced which may be classed with merchandize, or which is a valuable, other than such as is usual for personal use. Regard must be had to the quantity and value of the articles. A trunk of laces, for instance, although light and small in bulk, clearly is excluded. Their value would exclude them. The risk imposed upon the carrier, is not that contemplated in the implied contract to carry *baggage,* and to be responsible for it. The liability in such a case, would be wholly disproportioned to the compensation which he is presumed to derive from the fare of passengers. Besides, it is a fraud upon him to subject him to so great a hazard, without warning him of its existence.

[7.] As to extra baggage, the proprietors of railroads, steamboats, coaches, and omnibusses, &c., engaged in the business of conveying passengers, have the right to stipulate for compensation. So also, in regard to goods and baggage, which do not accompany the traveller or his agent; and if they hold themselves out to the public, as persons exercising a public employment, and as being ready to carry goods for hire, for persons in general, as to such goods and extra baggage, they are common carriers; that is, they are liable for loss, except when caused by the act of God and the public enemy. *Lovett vs. Hobbs,* 2 *Show. R.* 128. 1 *Salk.* 282. 1 *Pick.* 50. 2 *Wend.* 327. S. C. 6 *Wend.* 335. 9 *Ibid,* 85. 11 *Pick.* 45. *Story on Bail,* §500. 7 *New Hamp. R.* 137.

So, all articles of a value disproportioned to the compensation received in the fare of the passenger, and which must, on that account, subject the carrier to unreasonable hazard, and which are not presumed to be needed for personal use, either as a necessary or a convenience, I would suppose, are in like manner excluded. At the same time, I must say that the obligation of the carrier, which is incidental to, and implied from his contract to carry persons for hire, as to baggage, is not limited absolutely to wearing apparel and other appliances of necessity, comfort or convenience, suited to the condition of each traveller, but may embrace other articles of limited value and ordinary bulk, which he may think proper to take with him. If, howev-

er, it is apparent from all the circumstances—from the amount, nature, bulk and value of these articles—that they are such as, according to the usual course of business, are transported as freight; or if it is manifest that they are intended for sale, then they are not to be viewed in the light of baggage. It is certainly right too, that usage, however indeterminate, should be considered in ascertaining what is baggage. This must be the usage of the time, and of the carrier and his patrons. Nothing subject to the limitations before stated, should be excluded, which have been usually considered in practice as baggage. These remarks are made, not as containing the judgment of the Court, which prescribes them as rules, but as my own *obiter dicta*. Among other things, they are intended to demonstrate the utter impossibility of laying down any rule which can govern every case. And it is our judgment, that no such rule can be prescribed, but that each case must be controlled under the general principles which apply to the class, by the facts and circumstances which belong to it; the application of those principles to each case, being the duty of the Court, and the finding of the facts being the duty of the Jury. Under these views, we admit the evidence of Mrs. Dibble, to the extent of proving the contents of the trunk, according to the bill of particulars. The only question made, is a question of evidence. As I have endeavored to show, the witness is competent. We will not exclude her upon the ground that defendants are not liable for baggage, according to this bill of particulars; although her testimony will amount to nothing in proof of articles for which they are not in law bound. The bill of particulars shows a great variety of articles; some of which, indeed, many of which, constitute baggage, according to the strictest ruling to be found in the books. For these, the plaintiff is entitled to recover. No ruling of the Court below, and no exception in the bill makes it necessary to designate them. The Court ruled out the evidence, because, as he said, the trunk and its contents "were *sui generis*, and not within the rule." Now, although the contents of the trunk are various, yet some of them are such articles as the defendants are bound to make good; and therefore, it was error not to per-

mit them to be proved. It is not good law to hold that a passenger cannot recover for loss of baggage for which the defendants are liable, because he had also in his trunk articles for which they are not liable. The evidence must go to the Jury, and the extent of the recovery must be left with them, under the instructions of the Court.

Let the judgment be reversed.