40503. G. C. G. JEWELRY MANUFACTURING CORPORATION v. ATLANTA BAGGAGE & CAB COMPANY.

DECIDED MARCH 10, 1964—REHEARING DENIED APRIL 2, 1964.

*Woodruff, Savell, Lane & Williams, Edward L. Savell,* for plaintiff in error.

*Candler, Cox, McClain & Andrews, Edward Andrews,* contra.

*Eugene Cook, Attorney General, Paul Rodgers, Assistant Attorney General,* amicus curiae.

EBERHARDT, Judge. ■ Plaintiff urges that the defendant is exempted from the jurisdiction of the Public Service Commission by the terms of *Code Ann.* § 68-602 (b) (Ga. L. 1958, p. 688) and for that reason its operations are not affected by the Commission's rules, particularly Rules 57 and 58 by which the liability of a carrier for baggage is limited to $50.

It is alleged that the defendant's bus is operated from fixed termini in downtown Atlanta (certain hotels within the city limits) to the municipal airport, another fixed terminus inside the city limits of Atlanta, and that it does so without any intermediate stops for taking on or discharging passengers and their baggage. It is conceded that although the airport area is within the limits of and is a part of the city of Atlanta (Ga. L. 1960, p. 3040, et seq.) it is not contiguous to the remainder of the city and that in order to get from downtown Atlanta to the airport it is necessary to traverse an area not within the city limits.

The statute (*Code Ann.* § 68-602 (b)) provides that the Public Service Commission does not have jurisdiction of "busses . . . which operate within the corporate limits or police limits of cities and towns and are subject to regulations by the governing authorities of such cities or towns . . . and this exception shall apply to . . . busses even though such vehicles may in

the prosecution of their regular business occasionally go beyond the corporate limits of such towns or cities, provided they do not operate to or from fixed termini outside of said limits."

Although an exception to a statute is generally to be given a strict construction, *Williams v. Seaboard Air-Line R. Co.*, 33 Ga. App. 164, 165 (125 SE 769), *Dalton Brick &c. Co. v. Huiet*, 102 Ga. App. 221, 224 (115 SE2d 748), yet it must be construed in keeping with the purpose of the statute, and if the exception is susceptible of more than one construction it should be given that which is harmonious with the purpose.[1]

Defendant's bus does, it is contended, occasionally go beyond the city limits in getting to and from the airport and thus does so "in the prosecution of their regular business," but its operations are confined to fixed termini all of which are within the city limits.

It is to be noted that prior to the 1958 amendment, *Code* § 68-602 provided with reference to this exemption that it should apply to "busses . . . which generally operate exclusively within the corporate limits." The words "generally" and "exclusively" were deleted by the amendment, thus eliminating the requirement that the bus generally be operated exclusively or wholly within the city limits.

Although "occasionally" or "occasional" may and does mean "from time to time" and "now and then" it has other meanings and, if the context requires, others should be applied. Among

---

[1]It should be observed that each of the constructions suggested may, according to the particular facts, be applied to this exception. Under the facts here the definition of the word "occasionally" as having reference to place or places on the route of the bus where it may leave the city limits is in keeping with the purpose of the exception, but there are others in which the definition of "occasionally" as having reference to time, i.e., "now and then," is also in keeping. For example, vehicles based and operated within the city but which do make intermittent or sporadic special trips to points beyond the city limits, such as taxicabs, which are also mentioned in the statute and exception. There may be instances when the facts would make both definitions of the word applicable.

the definitions of "occasional" in Webster's New International Dictionary (2d Ed., unabridged) are "made or happening as opportunity requires or admits; casual; incidental." Since the obvious purpose of the statute here was to bring busses operating to and from fixed termini *outside the city limits* under the jurisdiction of the Public Service Commission but to leave to the regulation of the local authorities those which operate between fixed termini that are within the city limits, or engaged only in intra-city operations, we think it would be a strained construction to hold that simply because the bus, on its regular route, does go outside the limits, though taking on and discharging no passengers there, it must be regulated by the State agency. We judicially know that the corporate limits of many cities, including those of Atlanta, are not in the regular forms of circles, squares or parallelograms and that it is not infrequently that a street traverses intervening areas that are excluded from the city limits in going from one location to another within the city. Doubtless this very situation was in the mind of the legislature when provision was made that the exception from the Commission's jurisdiction would not be inapplicable simply because the bus might "in the prosecution of their regular business occasionally go beyond the corporate limits." We think that the traversing of an area outside the corporate limits in getting from downtown Atlanta to the municipal airport is "incidental" to the operation. Hence, in the context here, "occasionally" may mean "here and there" as well as "now and then." Under the allegations of the petition we conclude that the defendant's bus operations are not subject to the jurisdiction of the Commission.

So far as appears, the City of Atlanta has no regulation applicable to defendant's operation that limits its liability for the baggage of passengers. Accordingly, the common law relative to baggage and liability of carriers therefor is to be applied unless the defendant, by its conduct, waived the effect of the common law rules.

■ More than a century ago our Supreme Court settled the matter that "[b]aggage . . . does not embrace merchandise, or other valuables not designed for personal use, but which are

designed for other purposes, such as a sale or the like. We may safely say that it does not embrace merchandise or other articles which are intended to be sold. . . The risk imposed upon the carrier [in carrying merchandise] is not that contemplated in the implied contract to carry *baggage,* and to be responsible for it." *Dibble v. Brown,* 12 Ga. 217, 226 (56 AD 460). This negative definition of baggage was followed in *Hutchings & Co. v. Western &c. R.,* 25 Ga. 61 (71 AD 156) involving a passenger carrying in a carpetbag $87,000 in gold, silver, ore, etc.[2] Positively, *Dibble* defines baggage to include "the ordinary wearing apparel customarily carried by travelers . . . [and] other articles for the comfort and amusement of the passenger." Later it was held that jewelry as an article "of personal apparel and adornment" was included in the term "baggage." *Pullman Co. v. Green,* 128 Ga. 142 (1) (57 SE 233, 119 ASR 368, 10 AC 893). These authorities definitely establish that an item such as the jewelry sample case involved here is not "baggage" of a passenger under the rules of common law, and unless the defendant here waived the common law rule against its liability it could not be held for more than slight care as a gratuitous bailee—the absence of which does not appear from the facts alleged.

There is authority too, that the passenger carrying valuables is under a duty to disclose the facts and if he does not do so it would be a fraud upon the carrier to hold it for their value. This line of cases apparently had its origin in *Dibble,* 12 Ga. 217, supra, where the court said, at p. 227, "'Besides, it is a fraud upon [the carrier] to subject him to so great a hazard, without warning him of its existence." The theory was applied against a shipper in *Southern Exp. Co. v. Everett,* 37 Ga. 688, where a parent sent a $500 diamond breast pin to his minor daughter at college. The nondescript package containing the pin was delivered by the carrier to a 10 or 12 year old colored

---

[2]It happened April 10, 1854. Whether he was one of the "carpetbaggers" of the era following the civil war about whom we have heard so much is among the items lost or undiscovered in the lore of that time.

boy, who did not know of its contents. No questions were asked by the carrier's agent as to the value of the package. When it was delivered to the daughter the pin was missing. Chief Justice Warner said, at p. 691, "It is true, the defendant, as a common carrier, may require the nature and value of the goods delivered to him to be made known, but if the conduct of the shipper was such . . . as would be calculated to induce the defendant to believe that the goods delivered were of but little value, or such as would be calculated to conceal from him the true value thereof, and thereby throws him off his guard as to the necessity of making any inquiry as to the nature and value of the goods delivered, in order to deprive the carrier of his lawful freight, such conduct . . . would be a legal fraud upon the carrier." This position was adhered to in reversing a second verdict against the carrier. *Everett v. Southern Exp. Co.*, 46 Ga. 303. A similar factual situation and a like result is found in *Southern Exp. Co. v. Pope*, 5 Ga. App. 689 (63 SE 809). See also the following cases in which a recovery was denied the shipper based upon his failure to disclose the true facts relative to the goods shipped: *Savannah F. &c. R. Co. v. Collins*, 77 Ga. 376 (3 SE 416, 4 ASR 87) (bedding declared to carrier, but wearing apparel included) ; *Southern Exp. Co. v. Wood*, 98 Ga. 268 (25 SE 436) (the only copy of an opera libretto declared to be merely a "package of music.")

■ However, plaintiff here alleges that "by custom, the bellman at the hotel placed all baggage of passengers using said bus in the baggage compartment; and, by custom, the driver of such busses collected all fares" from the passengers, "without giving any transportation ticket and without giving any check or receipt for baggage carried by passengers." It is also alleged that the "defendant knew that most passengers using said bus were enroute to and from distant cities by air travel; and defendant knew that many of said passengers were businessmen or salesmen carrying various kinds of valuables, or samples, including jewelry; and that such samples or valuables would normally be incident to the travel of such salesmen or businessmen," that "by custom, defendant accepted all such baggage as part of the contract of carriage without making any additional charge; and

without making any distinction as to the kind or value of such baggage," and that "defendant customarily and habitually accepted such baggage for carriage without making any provisions for carrying such baggage without a limitation of liability."

In *Southern R. Co. v. Dinkins &c. Hdw. Co.,* 139 Ga. 332 (1) (77 SE 147, 43 LRA(NS) 806) the Supreme Court held that: "Goods or samples carried for the purpose of use in making sales are not baggage in the ordinary acceptation of that term; but if the carrier accepted such things as baggage with knowledge, express or implied, that they are offered for transportation as baggage, he thereby waives any objection on that ground, and his liability therefor is the same as that with reference to baggage in general." On page 335 the court further asserted: "The agent of the carrier, whose duty it is to receive and check baggage, has implied authority to bind the carrier by accepting as baggage trunks of traveling salesmen, containing samples, offered by a passenger for transportation, which such agent knows or is presumed to know from the circumstances the contents of the trunk tendered as baggage. And this knowledge may be implied from a general custom of receiving as the baggage of commercial travelers trunks which are generally known to contain sample articles of merchandise belonging not to the travelers but to their employers." And see 13 CJS 1681, Carriers, § 861.

Whether plaintiff will be able to demonstrate by its evidence that defendant's agent here had knowledge of the sample case and the nature of its contents is a matter to be determined upon a trial, where it will have the burden of establishing the waiver. Since it is alleged in the petition, upon demurrer we must take it as true. While plaintiff's salesman was under a duty to disclose the nature of the contents upon delivery of the sample case to the defendant for checking as baggage, if it can be shown that the defendant's agent knew of the nature and value we do not see how the failure to disclose could have prejudiced defendant. One is not under a duty to disclose to another that which he already knows.

The petition sets out a cause of action under count 1, and as to it the demurrers were improperly sustained. But in count 2 there is no allegation as to the custom of the defendant to accept

the sample cases of salesmen as baggage, nor is there any allegation that the defendant's agent for that reason or for any other knew about the fact that plaintiff's salesman had delivered his sample case to be transported as a part of his baggage or knew of the nature or value of its contents. Under the allegations of this count no waiver is alleged and no cause of action is set out. The demurrer to it was properly sustained, as it was to count 3, which proceeds upon an assumption that the Public Service Commission does have jurisdiction of defendant's bus operations but attacked the constitutionality of its Rules 57 and 58 which limit a carrier's liability for baggage to $50.

*Judgment affirmed in part; reversed in part. Bell, P. J., and Jordan, J., concur.*