38393. DALTON BRICK & TILE COMPANY
v. HUIET, Commissioner, *et al.*

DECIDED JULY 15, 1960.

*Fisher, Phillips & Allen, Charles M. Williamson,* for plaintiff in error.

*Otis L. Hathcock, Morgan C. Stanford,* contra.

TOWNSEND, Judge. ■ *Code Ann.* § 54-619 provides: "In any judicial proceeding under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." As to the construction of the employment security acts, it was held in *Young v. Bureau of Unemployment Comp.*, 63 Ga. App. 130, 135 (10 S. E. 2d 412): "The courts, as well as the administrator of the unemployment law, in construing and applying the provisions of such law must liberally construe and apply such law in the light of the public policy of this State, as declared in section 2 of the act. The courts shall be guided by the fact that the unemployment compensation law is intended to provide some income for persons who are, without fault of their own, temporarily out of employment." This court is accordingly committed to rendering a liberal interpretation of the act in accordance with its announced intention so as to give it a remedial construction and application. This does not mean that courts will affirm decisions not based on evidence, or that they will give strained and unnatural constructions to the statutory provisions, but it does mean that the announced purpose and intent of the acts will be carried out where a legitimate case in favor of the employee is made by the record.

■ The employer first raises a question of law as to the construction of *Code Ann.* § 54-610 (d) which provides in part as follows: "Disqualification for benefits. An individual shall be disqualified for benefits . . . (d) For any week with respect to which the Commissioner finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed." The contention is that, because the words of the statute are "stoppage of work which exists because of a labor dispute" instead of "directly" or "exclusively" because of a labor dispute, it is necessary for the applicants to show that no other consideration than the fact of a labor dispute had any bearing upon the unemployment; in other words, that if the evidence in this case shows that some other consideration combined with the work stop-

page in influencing the employer to close down the plant, and even if it shows that such other consideration was an equal or preponderating cause, the applicants would not be entitled because the work stoppage was also one factor involved in the decision. Cited in favor of this view are Dept. of Industrial Relations v. Drummond, 30 Ala. App. 78 (1 So. 2d 395); Nelson v. Texas Employment Commission, (Tex. Civ. App.) 290 S. W. 2d 708. On the other hand, cases from foreign jurisdictions cited by the defendants in error include Gulf Atlantic Warehouse Co. v. Bennett, 36 Ala. App. 33 (51 So. 2d 544); In re Wentworth's Claim, 200 N. Y. S. 2d 849. It is frequently held that exceptions and exemptions under unemployment compensation acts, being contrary to the expressed intention of the statute, should be given a narrow construction. Nordling v. Ford Motor Co., 231 Minn. 68 (42 N. W. 2d 576, 28 A. L. R. 2d 272); Gulf Atlantic Warehouse v. Bennett, 36 Ala. App. 33, supra. The provisions of *Code Ann.* § 54-610(d) providing for disqualification of benefits constitutes a list of exceptions to the general grant of such benefits contained in *Code Ann.* § 54-605, and the general rule is that "Statutes making exceptions to general rules must be strictly construed." *Williams v. Seaboard Air-Line Ry. Co.,* 33 Ga. App. 164, 165 (125 S. E. 769). This is particularly true where the purpose of the general statute is remedial in character. To disqualify for benefits under *Code Ann.* § 54-610(d) the stoppage of work must exist *because of* a labor dispute; in other words, a labor dispute must be the prime, efficient, proximate, motivating cause of the unemployment. The evidence must at least preponderate to the conclusion that had there not been a labor dispute the work stoppage would not have occurred, whether or not other things combined with the dispute to bring about the unemployment. And, since the general statutory enactment is one granting benefits upon proof of unemployment and other conditions of eligibility, an employer seeking to deny benefits to one otherwise eligible because of an excepting clause within the act has the burden of showing by a preponderance of the evidence that the employee comes within such exception.

■ The board of review in its de novo determination of this

cause found the applicants eligible for unemployment compensation, and that judgment was affirmed by the superior court. If supported by any evidence, it must be affirmed by this court. *Huiet v. Boyd,* 64 Ga. App. 564 (13 S. E. 2d 863). The testimony of the two officers of the defendant company in charge of the plant is firm that at the time the plant ceased using the two of its brick kilns which were in operation it had no orders to fill; that various employees or groups of employees were given one or more of three reasons for discontinuing the work in these kilns; the fact that they had no orders for brick at the time, that they had the uncertainty of the labor negotation hanging over them, not knowing whether the plant would be on strike (the employees had just voted not to renew the recently expired union contract); and not knowing the price to be set on brick made for inventory because of the uncertainty of the new wage scale; that no one of these reasons preponderated; that it would be impossible to say which had the greater weight in making the decision. The undisputed evidence is that, although the last two kilns were shut down within a day of the employee vote not to renew the contract, the contract had in fact been expired for about a month; that there had been no strike threat; that out of 40 employees, eight or ten were called to do jobs about the plant during the shut down; that all employees for whom work was made available came to work at the old wage scale. The testimony showed the winter months to be the slack months of company production; frequently during such months little or no work would be done except for building inventory for spring production due to lack of orders, and when the plant reopened in February, it did have some orders to be filled, but when it closed it had no orders to be filled. Although uncertainty as to pricing inventory brick was given as one of the three reasons for the shut down, it is inferable that had the company desired to make brick for inventory during this slack season it would not have been necessary to price the brick until subsequent offers of orders came in, and that as between the labor dispute and the lack of business the company was unable to assign either reason as having been of greater importance in its decision to shut down. There was no evidence that the shut

down would have resulted if, at the time, orders had been received. The employer accordingly failed to carry the burden of showing that the applicants were disqualified because their unemployment resulted from a work stoppage existing because of a labor dispute. The judge of the superior court did not err in affirming the decision of the board of review granting compensation benefits.

*Judgment affirmed. Gardner, P. J., Carlisle and Frankum, JJ., concur.*