In re the Petition of Cecelia OAK-
GROVE on Behalf of Rosalind
OAKGROVE, Deceased.

No. C8–85–492.

Court of Appeals of Minnesota.

July 16, 1985.

Michael R. Ruffenach, Bemidji, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Kenneth H. Bayliss, III, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Cecelia Oakgrove appeals a decision of the Minnesota Crime Victims Reparations Board denying a claim for reparations arising from the death of her daughter, Rosalind Oakgrove. Oakgrove contends her daughter died as the result of a crime as defined by Minn.Stat. § 611A.52(5)(c) (1984) and that she is entitled to reparations. We reverse.

## FACTS

Rosalind Oakgrove was standing next to a stalled vehicle that was struck by a vehicle driven by James William King. King was under the influence of alcohol and driving in excess of 85 m.p.h. at the time he struck the stalled vehicle. Rosalind Oakgrove and Buck Schoenborn were killed by the impact. Oakgrove's four-and-one-half-year-old son was injured. King pleaded guilty to involuntary manslaughter and was subsequently convicted by a U.S. District Court.

On behalf of her daughter, Cecelia Oakgrove submitted a $1,125 claim for funeral expenses to the Minnesota Crime Victims Reparations Board. The Board denied the claim, asserting that no crime had been committed within the meaning of Minn. Stat. § 611A.52(5). Cecelia Oakgrove requested an administrative hearing. The administrative law judge concluded that the claim was precluded by the motor vehicle exclusion of Minn.Stat.

§ 611A.52(5)(c) and recommended that it be denied. The board adopted the administrative law judge's report and recommendation. Cecelia Oakgrove appeals.

## ISSUES

Did Rosalind Oakgrove die as the result of a crime as defined by Minn.Stat. § 611A.52(5)(c)?

## DISCUSSION

■ Judicial review of administrative agency decisions is governed by the Administrative Procedures Act, Minn.Stat. § 14.63–.69 (1984). We may reverse the agency's decision if we find it is affected by error of law. *See* Minn.Stat. § 14.69.

The Minnesota Crime Victims Reparations Act, Minn.Stat. § 611A.51–.67, provides for recovery of economic loss when a victim has suffered personal injury or death directly resulting from a crime as defined by Minn.Stat. § 611A.52(5). Under Minn.Stat. § 611A.52(5)(c),

> "[c]rime" does not include conduct arising out of the use of a motor vehicle * * unless (i) the conduct was intended to cause personal injury or death, or (ii) the use of the motor vehicle * * * in the commission of a felony was a proximate cause of the victim's injury or death.

Oakgrove contends that conviction of involuntary manslaughter under 18 U.S.C. § 1112 is sufficient as a matter of law to meet the requirements of Minn.Stat. § 611A.52(5)(c)(i). We agree.

■ King was convicted of involuntary manslaughter under federal law.[1] The federal crime of manslaughter is defined as "the unlawful killing of a human being without malice." 18 U.S.C. § 1112(a). In order to be convicted of involuntary manslaughter, the slayer must have

> acted grossly negligently in that he acted with a wanton or reckless disregard for human life, knowing that his conduct was a threat to the lives of others or having knowledge of such circumstances

as could reasonably have enabled him to foresee the peril to which his act might subject others.

*United States v. Schmidt,* 626 F.2d 616, 617 (8th Cir.1980), *cert. denied,* 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 136 (1980). Manslaughter is a crime of general intent. It does not include an element of willfulness or specific intent. *United States v. Marshall,* 470 F.Supp. 194 (D.Mont.1979).

The Board argues that general intent is not sufficient to support a finding of intent under Minn.Stat. § 611A.52(5)(c)(i). It further argues that in order for Oakgrove to recover, the record must support a finding that King specifically intended to cause her death. The Board's construction of intent for the purposes of defining crime under Minn.Stat. § 611A.52(5)(c)(i) is erroneous.

■ The Crime Victims Reparations Act is remedial legislation. As a general rule,

> a liberal construction is usually accorded statutes which are regarded by courts as humanitarian or which are grounded on a humane public policy. Where there are disqualifying provisions, the exceptions should be narrowly construed.

*Nordling v. Ford Motor Co.,* 231 Minn. 68, 76–77, 42 N.W.2d 576, 581–82 (1950) (citations omitted). "Intent" in Minn.Stat. § 611A.52(5)(c) is not modified by the word specific. We decline to read the word specific into the statute because, contrary to our rules of construction, the motor vehicle exception would then be broad rather than narrow.

The board relies heavily upon *In Re Turner,* 44 Pa.Cmwlth. 326, 403 A.2d 1346 (1979), in which the court interpreted the Pennsylvania crime victims compensation statute, which provides that

> no act involving the operation of a motor vehicle which results in injury shall constitute a crime for the purposes of this act unless such injury was intentionally inflicted through the use of a motor vehicle.

1. The incident took place within the confines of the Red Lake Indian Reservation.

Pa.Admin.Code § 477 (1976). The Pennsylvania court upheld the board and denied the claim of a woman whose husband was killed by an automobile even though the driver was subsequently convicted of murder and involuntary manslaughter. It acknowledged that criminal intent encompasses reckless and negligent conduct as well as knowing and purposeful acts but nonetheless held the word "intentionally" as used by the Pennsylvania legislature is not synonomous with the technical criminal law concept. The Pennsylvania court believed the Pennsylvania legislature was attempting to avoid compensating every victim of an automobile accident where the driver responsible was charged with a crime as the result of gross negligence or recklessness. Therefore, it thought a "more reasonable" construction of "intentionally" would be (1) an act done with the purpose of causing death or injury, such as running down an enemy, or (2) an act done with knowledge that the injury or death of another would be an inevitable consequence, such as driving purposefully into a crowd.

The Minnesota board's reliance on *Turner* is unwarranted for several reasons. First, under both Pennsylvania and Minnesota law, words are to be construed "according to their common and approved usage" unless they have acquired a special meaning. 1 Pa.Comm.Ct. § 1903(a) (1972); Minn.Stat. § 645.08 (1984). The Pennsylvania court held the word "intentionally" is not synonymous with the technical criminal law concept of criminal intent. In effect, it recognized that intent has acquired a special meaning when used in the context of crime, but it refused to use the special meaning. We think it is more reasonable to give intent the special meaning it has acquired in a case such as this one, where we are defining "crime." Second, the Pennsylvania court did not recognize the crime reparation legislation as remedial legislation deserving of liberal construction. Finally, the wording of the Minnesota and Pennsylvania statutes is substantially different. Under the Pennsylvania statute, there is no "crime" unless the

*"injury* was intentionally inflicted." Pa. Admin.Code § 477 (emphasis supplied). Under the Minnesota statute, there is no "crime" unless "the *conduct* was intended * * *." Minn.Stat. § 611A.52(5)(c)(i) (emphasis supplied). Contrary to the board's final order, conduct here included not only driving a vehicle but driving it while under the influence of alcohol and at an outrageous speed. Pennsylvania's statute lends itself to a construction which requires specific intent. Minnesota's does not.

### DECISION

 The Board erred in concluding that Minn.Stat. § 611A.52(5)(c)(i) requires a specific, rather than a general, intent. It interpolated a word to reach a desired interpretation. Manslaughter under the federal statutes is a crime of general intent. On its face Minn.Stat. § 611A.52(5)(c)(i) requires no more. Conviction of involuntary manslaughter under 18 U.S.C. § 1112 is sufficient as a matter of law to meet the definition of a crime under this statute.

Reversed.