ROCKY MOUNTAIN OIL & GAS ASSO-
CIATION, a nonprofit organization;
North Dakota Petroleum Council, a
nonprofit organization; Western Gas
Processors, Ltd.; Phillips Petroleum
Company, Plaintiffs and Appellants,

v.

Kent CONRAD, Tax Commissioner of
the State of North Dakota,
Defendant and Appellee.

Civ. No. 11287.

Supreme Court of North Dakota.

April 29, 1987.

Fleck, Mather, Strutz & Mayer, Bismarck, for plaintiffs and appellants; argued by R. Russell Mather.

Robert W. Wirtz, Asst. Atty. Gen., Bismarck, for defendant and appellee.

LEVINE, Justice.

In this appeal we consider the authority of the State Tax Commissioner to assess sales or use taxes upon plant fuel used by gas processing plants in North Dakota. We hold that the assessment of the sales or use taxes in this case is authorized. We, therefore, affirm.

Appellants Rocky Mountain Oil & Gas Association and the North Dakota Petroleum Council are nonprofit trade organizations servicing and representing the oil and gas industry in North Dakota. Appellants Western Gas Processors, Ltd. and Phillips Petroleum Company own and operate natural gas processing facilities located in North Dakota. For ease of reference, we refer to the appellants collectively as the taxpayers.

The taxpayers commenced a declaratory judgment proceeding to enjoin the North Dakota State Tax Commissioner from assessing North Dakota sales tax[1] upon "plant fuel" consumed in the operation of certain natural gas processing facilities located in North Dakota. The taxpayers claim that the Commissioner is without statutory authority to levy sales or use taxes and that a contrary interpretation of the statutes renders those statutes violative of the commerce clause of the federal Constitution.

The case was presented to the district court on stipulated facts as well as the testimony of Walter M. Stack, Director of Sales and Special Taxes for the Tax Commissioner. The district court dismissed the action and the taxpayers appealed.

While the facts are undisputed, we believe it helpful to outline the steps involved in gas processing. Raw gas is collected from various lease sites into the processing facilities' gathering systems. The raw gas is separated into its component parts and certain chemical contaminants are removed. The gas remaining after raw gas is processed is called residue gas. Most of the residue gas exits the plant tailgate and is sold to Montana-Dakota Utilities. However, a portion of the residue gas, called "plant fuel," is withdrawn from the residue gas stream for use by the processing facilities. The "plant fuel" is used to run hot oil furnaces, compression/refrigeration units, flares, sulfur plant facilities, and booster stations along the pipeline system. All plant fuel at issue is residue gas that was processed in the taxpayers' processing facilities.

1. The Tax Commissioner's answer asserted that plant fuel is subject not only to the sales tax imposed by ch. 57–39.2, NDCC, but is also subject to the use tax imposed by ch. 57–40.2, NDCC. Chapters 57–39.2 and 57–40.2, NDCC, impose an integrated system of excise taxes upon certain statutorily defined "sales" or "uses" of various commodities within the state of North Dakota. *See generally* Maichel, North Dakota Sales and Use Tax Laws and Their General Application, 47 N.D.L.Rev. 383 (1971). The use tax is complementary to the retail sales tax. NDCC § 57–40.2–04. Neither the Tax Commissioner nor the taxpayers distinguish between sales and use taxes in their arguments. So we follow the parties' lead and treat the two taxes disjunctively throughout our opinion.

The issues framed by the taxpayers are: (1) Whether the North Dakota State Tax Commissioner has the statutory authority to assess sales or use taxes upon the "plant fuel" used by the taxpayers in their gas processing facilities? (2) Whether the assessment of sales or use taxes with respect to the "plant fuel" used in the processing facilities violates the commerce clause of the federal Constitution?

■ Our standard of review of a judgment declaratory in nature is the same as in any other case. NDCC § 32–23–07; *American Hardware Mutual Ins. Co. v. Dairyland Ins. Co.*, 304 N.W.2d 687, 689 (N.D.1981). The interpretation of a statute is a question of law, fully reviewable by this Court. *Ladish Malting Co. v. Stutsman County*, 351 N.W.2d 712, 718 (N.D. 1984). In determining the meaning of statutes, the primary objective is to ascertain the intent of the Legislature. *Ladish Malting Co.*, *supra*. The legislative intent must first be sought from the language of the statute; however, if a tax statute is ambiguous so that the legislative intention with respect to the meaning of the statute is doubtful, the doubt must be resolved in favor of the taxpayer. *Ladish Malting Co.*, *supra*.

The taxpayers advance three arguments in support of their contention that the Tax Commissioner does not have the statutory authority to assess sales or use taxes upon plant fuel used by the processing facilities.

First, the taxpayers argue that the transaction by which plant fuel is obtained is not a "retail sale" within the meaning of NDCC § 57–39.2–02.1[2] because the plant fuel is not acquired by "sale." They contend that rather than purchasing the plant fuel from producers, the processors take possession of all the raw gas produced at the wellhead, process that gas, and sell the products of processing to third parties pursuant to the terms of their standard "gas purchase contracts." Under the contracts the producers receive a pro rata "pass-through" percentage of whatever price the processor receives for the plant products from the third-party purchaser. The producers are not paid a fixed price for the raw gas collected from their wells, nor do the processors receive a flat fee for their processing services. The contracts also provide that the processors are entitled to burn some of the raw gas in the course of plant operations. Because the contracts do not attempt to quantify the amount of plant fuel that may be used by the processors without charge, nor provide for a separate charge to the processors for the utilization of plant fuel, the taxpayers argue that the incidental use of plant fuel under these circumstances cannot constitute a "retail sale" as defined by NDCC § 57–39.2–01(7).[3]

■ We believe the transaction by which the processors obtain plant fuel constitutes a "sale." The term "sale" is broadly de-

---

2. Section 57–39.2–02.1, NDCC, provides in pertinent part:

1. Except as otherwise expressly provided in subsection 2 for sales of mobile homes used for residential or business purposes and for sales of farm machinery and irrigation equipment used exclusively for agricultural purposes and except as otherwise expressly provided in this chapter, there is imposed a tax of four percent upon the gross receipts of retailers *from all sales at retail* including the leasing or renting of tangible personal property as provided in this section, within the state of North Dakota of the following to consumers or users:

a. Tangible personal property, consisting of goods, wares, or merchandise, except mobile homes used for residential or business purposes and farm machinery and irrigation equipment used exclusively for agricultural purposes. [Emphasis supplied.]

3. Section 57–39.2–01(7), NDCC, provides:

7. "Retail sale" or "sale at retail" means the sale, including the leasing or renting, to a consumer or to any person for any purpose, other than for processing or for resale, of tangible personal property; *the sale of steam, gas, and communication service to retail consumers or users*; the ordering, selecting, or aiding a customer to select any goods, wares, or merchandise from any price list or catalog, which the customer might order, or be ordered for such customer to be shipped directly to such customer; the sale or furnishing of hotel, motel, or tourist court accommodations, tickets, or admissions to any place of amusement, athletic event, or place of entertainment including the playing of any machine for amusement or entertainment in response to the use of a coin; and the sales of magazines and other periodicals.

fined by NDCC § 57–39.2–01(9) as "any transfer of title or possession, exchange or barter, conditional or otherwise, in any manner or by any means whatever, for a consideration." While a specific price is not allocated to the plant fuel used by the taxpayers, there can be no doubt that possession of natural gas passes from the producers to the taxpayers for a consideration. The taxpayers receive from the producers raw gas which is processed and, except for the plant fuel used by the processing facilities, resold to third parties. In return, the producers receive consideration in the form of a percentage of the proceeds from those sales. Further, the "sale" of plant fuel is a "retail sale" as defined by NDCC § 57–39.2–01(7). As the district court explained:

> "Here, the gas processor is the ultimate user or consumer. Although the payment to the producer is based on a percentage of the price ultimately received for the end products, the court has no doubt that there has been a sale.
>
> "The plaintiffs' contracts with producers are set up as purchase contracts. The fact that all of the gas is processed does not change the reality that a portion of it is purchased *ultimately for plant use*." [Emphasis in original.]

A "retail sale" is the sale of tangible personal property to a consumer. NDCC § 57–39.2–01(7). Because the taxpayers are the consumers of the plant fuel at issue, the transaction falls squarely within the definitions of "sale" and "retail sale" in NDCC § 57–39.2–01.

The taxpayers' second argument is that because plant fuel is used in the processing operations, it is excluded from the definition of retail sale under the "for processing or for resale exclusion" found in NDCC § 57–39.2–01(7). Retail sale is defined as "the sale, including the leasing or renting, to a consumer or to any person for any purpose, *other than for processing or for resale*, of tangible personal property...." NDCC § 57–39.2–01(7). [Emphasis supplied.] Section 57–39.2–01(7) also defines the term "processing" as follows:

> "By the term 'processing' is meant any tangible personal property including containers which it is intended, by means of fabrication, compounding, manufacturing, producing, or germination *shall become an integral or an ingredient, or component part of other tangible personal property intended to be sold ultimately at retail*." NDCC § 57–39.2–01(7). [Emphasis supplied.]

■ The plant fuel used by the processors in their operations does not become an integral or an ingredient, or component part of other products intended to be sold ultimately at retail. The plant fuel is consumed by the processors and is never resold. Thus, the plant fuel used by the processing facilities is not personal property that is "processed" and so the exclusion "for processing or for resale" does not apply.

The taxpayers warn that such an interpretation retroactively converts the sale of raw gas "for processing or for resale" into a retail sale if and when such raw gas is used in the processing facilities. A similar argument was considered by the Supreme Court of Illinois in *Mobil Oil Corporation v. Johnson*, 93 Ill.2d 126, 66 Ill.Dec. 285, 442 N.E.2d 846 (1982).

■ In *Mobil Oil*, Mobil contested the assessment of Illinois use tax upon its use of three refinery fuels produced incidentally during the process of refining crude oil. *Mobil Oil Corp., supra* 66 Ill.Dec. at 287, 442 N.E.2d at 848. Mobil argued that it did not purchase crude oil "at retail" because its sole purpose in purchasing crude oil was to refine it, not to use it. *Mobil Oil Corp., supra*, 66 Ill.Dec. at 288, 442 N.E.2d at 849. The Illinois sales and use tax statutes are similar to North Dakota's sales and use tax statutes. Construing the Illinois statutes, the court held that because Mobil used the refinery fuels in its operations, it was subject to use tax. *Mobil Oil Corp., supra*, 66 Ill.Dec. at 289, 442 N.E.2d at 850. The court relied on its previous holding that a single sale is not an indivisible unit but taxability is determined by the uses to which the property is put. *Mobil Oil Corp., supra*, 66 Ill.Dec. at 290, 442 N.E.2d

at 849. We agree with this principle and accordingly find that because plant fuel is consumed by the taxpayers in its processing operations, the fuel is purchased at retail and thus subject to sales or use taxes.

The Attorney General has concluded that a retail sales tax must be paid on that part of refined gas consumed in the operation of a refinery, if the raw gas is owned by others and processed by the refiner under contracts that authorize the refiner to use some of the refined gas to operate the refinery. N.D. Att'y Gen.Op. 82–55, p. 166. While not binding upon this Court, an Attorney General's opinion has important bearing upon the construction and interpretation of a statute. *State v. Reich*, 298 N.W.2d 468, 471 (N.D.1980).

We find further support for our determination that plant fuel is subject to sales or use taxes from the construction of the tax statutes by the agency responsible for their administration. Walter M. Stack, Director of the Sales and Special Taxes Division of the North Dakota State Tax Department, testified that when raw material is purchased for the purpose of processing or manufacturing, the taxpayer does not at that point pay a retail sales tax. However, when the taxpayer converts to its own use some of the raw material, the "for processing" exclusion no longer applies.

■ The practical construction of a statute by the agency administering the law is entitled to some weight in construing the statute, if the agency interpretation does not contradict clear and unambiguous statutory language. *Clapp v. Cass County*, 236 N.W.2d 850, 856 (N.D.1975). We believe that the construction and application of the sales and use tax laws by the Tax Commissioner in this case are clearly supported by the language of the statutes.

The third argument advanced by the taxpayers is that NDCC § 57–39.2–04, which sets forth specific exemptions from the sales tax, precludes assessment of sales or use taxes on plant fuel. Section 57–39.2–04(10), NDCC, provides:

"There are specifically exempted from the provisions of this chapter and from

computation of the amount of tax imposed by it the following:

. . . . .

"10. Gross receipts from the sale of gasoline, insurance premiums, or any other article or product, except as otherwise provided, upon which the state of North Dakota imposes a special tax."

The taxpayers contend that because plant fuel is subject to a "special tax," namely, the oil and gas gross production tax imposed by NDCC § 57–51–02, it is exempt from sales or use taxes. The taxpayers argue that the oil and gas gross production tax is an "in lieu" tax so that payment of the gross production tax precludes the assessment of additional excise taxes on oil and gas.

■ The claimant of a tax exemption has the burden of establishing its exempt status, and a tax-exemption statute will be strictly construed against the claimant. *Minot Farmers Elevator v. Conrad*, 386 N.W.2d 463, 466 (N.D.1986); *Grant Farmers Mutual Fire & Lightning Ins. Co. v. State by Conrad*, 347 N.W.2d 324, 327 (N.D.1984). In construing statutes, we seek the Legislature's intent initially from the statutory language. *County of Stutsman v. State Historical Society of North Dakota*, 371 N.W.2d 321, 325 (N.D.1985). We give meaning to every word, phrase and sentence. *See State ex rel. Olson v. Bakken*, 329 N.W.2d 575, 578 (N.D.1983).

■ We reject the taxpayers' argument that plant fuel is exempt from sales or use taxes because it is subject to the gross production tax. The express language of the statutes demonstrates the Legislature's intention not to exempt plant fuel from sales or use taxes. Section 57–39.2–04(10), NDCC, exempts from sales tax the "[g]ross receipts from the sales of gasoline, insurance premiums, or any other product, *except as otherwise provided*, upon which the state of North Dakota imposes a special tax." [Emphasis supplied.] The Legislature has provided otherwise in the oil and gas gross production tax provisions. Section 57–51–03, NDCC, states:

"It is expressly provided that the gross production tax shall not be in lieu of income taxes *nor excise taxes* upon the sale of oil and gas products as [*sic*] retail." [Emphasis supplied.]

The taxpayers themselves characterize the sales and use taxes as excise taxes. Because the Legislature has expressly provided that the gross production tax is not in lieu of excise taxes, we do not believe the Legislature intended to exempt plant fuel from sales or use taxes under the exemption provided by NDCC § 57–39.2–04(10).[4] Therefore, we hold that the plant fuel at issue is not exempt from sales or use taxes.

Because we hold that the Tax Commissioner has the statutory authority to levy the taxes at issue, we must address the taxpayers' claim that the assessment of sales or use taxes upon plant fuel under the circumstances of this case violates the commerce clause of the federal Constitution by impermissibly burdening interstate commerce.

The taxpayers' constitutional argument is based upon the premise that the plant fuel plays an important role in interstate commerce by facilitating the movement of gas through the pipeline system. However, the stipulation of facts fails to disclose how much of the processed gas, if any, finds its way into interstate commerce or how much of the plant fuel is used to run booster stations which keep the gas flowing through the pipeline system. Deciding the constitutional question without evidence of interstate commerce would amount to nothing more than giving an advisory opinion on an abstract, hypothetical legal question. *Cf. State v. King*, 355 N.W.2d 807, 809 (N.D.1984). Therefore, we decline to decide the constitutional issue.

In sum, we conclude that the Tax Commissioner has the statutory authority to levy sales or use taxes with respect to the "plant fuel" consumed by the processing

facilities. Accordingly, the judgment of the district court is affirmed.

ERICKSTAD, C.J., MESCHKE, J., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.

VANDE WALLE, Justice, dissenting.

I respectfully dissent. Despite the holding of *Mobil Oil Corporation v. Johnson*, 93 Ill.2d 126, 66 Ill.Dec. 285, 442 N.E.2d 846 (1982), to the contrary, I do not agree that under North Dakota statutes the gas used by the plant processors in their operations is subject to the use or sales tax. In the first instance I would hold the transaction does not constitute a sale and, if I were to conclude it constituted a sale, I would nevertheless hold it was exempt under the "for processing or for resale" exclusion contained in the definition of "sale" in Section 57–39.2–01(7), N.D.C.C. The Tax Commissioner draws too fine a distinction between property which is intended to become a part of the property sold ultimately at retail and the use of the gas, under these circumstances, to produce that property. Thus I assume this holding will also apply in those situations in which gas produced with oil is used to fuel a production pump at the wellsite, as permitted by most leases, and that such gas will now be considered sold to the operator. Or, if it is held that the operator cannot purchase from itself, it will at least be considered a sale to the extent of the lessor's royalty interest in the production. I do not believe that the tax statutes must be construed to tax everything and anything that is not nailed down if there is any conceivable construction which will support taxation.

I am also disturbed by the posture of this case. It was brought as a declaratory-judgment action. But we should not decide the legislative intent of these statutes in a

---

**4.** When it meant to exempt products from sales or use taxes, the Legislature clearly expressed its intent. Section 57–61–01, NDCC, provides for the imposition of a severance tax upon coal and specifically states "[s]uch severance tax shall be

in lieu of any sales or use taxes imposed by law." *See also* NDCC § 57–32–01.1 (statute specifically states that taxes imposed on air carrier transportation property are in lieu of sales and use taxes).

vacuum. Although North Dakota has had refineries for many years and although the practice of using gas in the refining process has been followed for many years, we are given no history of the construction and interpretation of those statutes by the Tax Commissioner during those years. The applicable statutes are not new nor is the refining process. We do not know if the interpretation and application of the statutes by the Tax Commissioner to the process is new. Such information would have been helpful, at least to me, in deciding the issue at hand, for it would have given us an understanding of the intent of the Legislature in enacting the applicable statutes. Thus in *Mobil Oil Corporation v. Johnson, supra,* Mobil argued that there was a change in the Department of Revenue's policy regarding the taxability of the use of refinery fuels. But in that case the court referred to a rule adopted by the Department in 1969, which set forth the Department's policy although the Department did not, in fact, tax the refinery fuels under that rule. The Illinois court further noted that the rule was consistent with earlier holdings of the court. No such contention is made in this case.

Unless there is a reasonable explanation for an abrupt change in interpretation of applicable statutes, changes in taxation policies are more properly matters for legislative determination than for the philosophy of the Tax Commissioner.