James **MARION**, Petitioner
and Appellant,

v.

**JOB SERVICE NORTH DAKOTA** and
**Department of Corrections and Reha-**
**bilitation, Respondents and Appellees.**

Civ. No. 900340.

Supreme Court of North Dakota.

June 3, 1991.

Bair, Brown & Kautzmann, Mandan, for petitioner and appellant; argued by Dwight C.H. Kautzmann.

John J. Fox (argued), Asst. Atty. Gen., Bismarck, for respondents and appellees. Appearance by David E. Clinton, Asst. Atty. Gen.

GIERKE, Justice.

James L. Marion appealed from a district court judgment affirming a decision by Job Service of North Dakota (Job Service) denying Marion's request for unemployment compensation benefits. We affirm.

Marion's employment with the Department of Corrections and Rehabilitation was terminated by the director of that department, effective July 25, 1989. At the time of his discharge, Marion was employed as the Director of Probation and Parole and also served as Clerk to the Pardon and Parole Board.

The reasons for Marion's termination involved his use of confiscated property which was in the department's possession. More specifically, Marion removed a confiscated shotgun from a locker in which it was kept for safekeeping and he and his son used it while hunting during the fall of 1987 and again in 1988. The shotgun remained at Marion's home and was not returned until after an investigation of the incident had commenced. In 1988, Marion also traded confiscated weapons in the department's possession in exchange for jackets to be used by the parole and probation officers in the department. This trade was allegedly unauthorized and in violation of department procedures.

Following his termination, Marion applied for unemployment compensation benefits with Job Service. A claims deputy found that Marion was not entitled to benefits, because Marion was terminated for reasons constituting misconduct in connection with his work. A hearing was then held before Job Service's Chief Appeals Referee. The referee concluded that Mar-

ion was entitled to benefits, because the use of the shotgun, although constituting an "incident of poor judgment," did not constitute misconduct for purposes of disqualifying Marion from receiving unemployment benefits. The appeals referee also concluded that there was no evidence in the record to demonstrate that Marion acted improperly in exchanging confiscated weapons for jackets.

The Executive Director of Job Service then reviewed the record, and reversed the referee's decision, concluding that Marion was not entitled to benefits because his use of the shotgun constituted disqualifying misconduct. In reaching his decision, the Executive Director did not refer to, and apparently did not rely upon, the incident involving the exchange of confiscated weapons for jackets. Marion appealed to the district court, which affirmed Job Service's decision denying benefits. Marion then appealed from the district court judgment to this court, and on appeal has raised two issues:

"1. DID THE ACTIONS OF JIM MARION AMOUNT TO MISCONDUCT THAT DISQUALIFIES HIM FROM RECEIVING UNEMPLOYMENT COMPENSATION?

"2. WAS JOB SERVICE JUSTIFIED IN DENYING BENEFITS BECAUSE OF THE CONDUCT IN QUESTION, AFTER ITS CHIEF APPEALS REFEREE HAD DECIDED IN FAVOR OF JAMES MARION?"

■ The scope of review of administrative agency decisions in this court is governed by Section 28–32–19, N.D.C.C., which provides that the decision of the agency shall be affirmed unless the court finds that one of the following is present:

"1. The decision or determination is not in accordance with the law.

"2. The decision is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions and decision of the agency are not supported by its findings of fact."

In reviewing the factual basis of an administrative agency's determinations we do not make independent findings of fact or substitute our judgment for that of the agency, but we determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached by the agency were proved by the weight of the evidence from the entire record. *Pickard v. Job Service North Dakota,* 422 N.W.2d 409 (N.D.1988).

■ A person who has been discharged for misconduct in connection with his most recent employment is disqualified from receiving unemployment benefits. Section 52–06–02(2), N.D.C.C. The term "misconduct" is not statutorily defined. However, in *Perske v. Job Service North Dakota,* 336 N.W.2d 146, 148–149 (N.D. 1983), we adopted the following definition of "misconduct" as originally set forth in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636, 640 (1941):

" '... conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.' "

We have most recently declared that the determination of whether a person's actions constitute misconduct, for purposes

of determining eligibility for unemployment compensation benefits, involves a mixed question of fact and law, and that to uphold an agency's decision the evidence must support its findings of fact which, in turn, must sustain its conclusion regarding misconduct. *Medcenter One v. Job Service North Dakota*, 410 N.W.2d 521 (N.D.1987). Where the facts are disputed we apply the deferential standard of review applicable to findings of fact and determine only whether a reasoning mind could have determined that the factual conclusions were proved by the weight of the evidence. *E.g., Blueshield v. Job Service North Dakota*, 392 N.W.2d 70 (N.D.1986). Where the Bureau's conclusions are based upon undisputed facts we review those legal conclusions anew. *E.g., Newland v. Job Service North Dakota*, 460 N.W.2d 118 (N.D.1990).

In this case, Marion's actions underlying the alleged misconduct are not in dispute. Marion concedes that he took the shotgun for his personal use during two hunting seasons. However, Marion asserts that this constitutes, at most, a good faith error in judgment and not disqualifying misconduct.

■ The Executive Director provided the following relevant written analysis underlying his decision to deny benefits:

"The referee reasoned, 'The claimant used poor judgment in using property placed in his trust for his personal use, especially because of his position of leadership in the field of law enforcement.' He further reasoned that 'this incident of poor judgment does not constitute misconduct for the purposes of unemployment insurance.' However, the referee's reasons for the decision are modified as explained herein. Although a good faith error in judgment generally does not constitute misconduct, it cannot be said that the claimant's repeated actions in using public property for personal use represents a good faith error in judgment. Conversion of public property, especially when that property is placed in a secure location for safekeeping, is a serious matter. Based on the claimant's extensive background in law enforcement ac-

tivities, it can be reasonably concluded that the claimant understood that the taking of public property entrusted to him for safekeeping was wrong. This is especially true in light of the fact that the claimant offered no reasonable explanation for the repeated and prolonged use of the confiscated shotgun.

"The Bureau concludes that the claimant, in taking public property for personal use, deliberately violated or disregarded standards of behavior which the employer has the right to expect of its employee and constitutes misconduct as that term is defined for the purposes of unemployment compensation."

We find the Executive Director's analysis to be persuasive. When the alleged misconduct occurred, Marion, as the Director of Probation and Parole, was the chief parole officer in the state. One could reasonably infer that the taking for personal use of confiscated property in the department's possession, particularly by someone, like Marion, employed in a relatively high level supervisory position, involved conduct falling below the standard of behavior that his employer had the right to expect. It would be reasonable for Marion's employer to expect that he, as the state's chief parole officer, must set by example the standard of conduct expected from his subordinates. It is not unreasonable for Marion's employer to expect that Marion, in setting that standard, must conduct himself in a manner beyond reproach or criticism. As expressed by the Executive Director, Marion's repeated and prolonged use of the shotgun is also a relevant factor in concluding that his actions constituted disqualifying misconduct rather than a mere good faith error in judgment. We believe that a reasoning mind could conclude, as did the Executive Director in this case, that Marion's actions evinced an intentional and substantial disregard of the standard of behavior which his employer had the right to expect from him, and that Marion's actions constituted disqualifying misconduct.

■ On appeal Marion questions the justification for Job Service denying his request for benefits, where the chief appeals referee, who had the advantage of hearing and seeing the witnesses testify, decided in

Marion's favor. In *Speedway, Inc. v. Job Service,* 454 N.W.2d 526 (N.D.1990), we stated that in an appeal involving a final decision by Job Service we review the decision of the Executive Director to determine whether the appealing party has raised an appropriate ground for reversal of the agency's determination. We also explained our review process in *Schultz v. North Dakota Department of Human Services,* 372 N.W.2d 888, 892 (N.D.1985):

> "Although a hearing examiner has the advantage of hearing and seeing witnesses testify, an agency may reject the examiner's decision even on a question involving the credibility of contradictory witnesses.
>
> \*   \*   \*   \*   \*   \*
>
> "We do not believe it is appropriate to probe the Executive Director's mental process in arriving at his decision. Our inquiry is limited to a review of the findings, conclusions, and decision of the agency under the appropriate standard of review. The findings, conclusions, and decision should be sufficient to explain the rationale for not following the hearing officer's recommendation."

In this case the Executive Director expressly analyzed his reasons for concluding that Marion's actions constituted disqualifying conduct and for disagreeing with the referee's conclusion that Marion's actions merely constituted poor judgment. We conclude that the Executive Director adequately explained his rationale for not following the referee's recommendation.

In accordance with this opinion, the judgment of the district court upholding Job Service's denial of benefits is hereby affirmed.

VANDE WALLE, Acting C.J., MESCHKE and LEVINE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of ERICKSTAD, C.J., disqualified.