Barry HULSE, Petitioner and Appellant,

v.

JOB SERVICE NORTH DAKOTA,
Respondent and Appellee,

and

Dakota Boys Ranch Assn., Respondent.

Civ. No. 920161.

Supreme Court of North Dakota.

Nov. 24, 1992.

Richard R. LeMay of Legal Assistance of North Dakota, Minot, for petitioner and appellant.

Douglas A. Bahr, Asst. Atty. Gen., Bismarck, for respondent and appellee.

LEVINE, Justice.

Barry Hulse appeals from a district court judgment affirming Job Service's decision denying him unemployment compensation benefits. We hold that his sotto voce utterance of an expletive did not constitute benefit-disqualifying "misconduct" and, therefore, reverse and remand.

Hulse was employed for approximately two-and-a-half years as a child care worker for Dakota Boys Ranch Association (Boys Ranch). On September 1, 1991, Hulse spent his day off working the shift of a cook who was on vacation. The shift went beyond schedule and Hulse, anxious to finish so that he could leave, was delayed because many of the evening's chores remained to be completed by the Boys Ranch residents. Hulse became irritated upon discovering that one of the residents, Smith [a pseudonym], was not cooperating with the other residents who were working in the dining room. Frustrated, Hulse went to the dining room, expressed to Smith his dissatisfaction with Smith's refusal to participate with the others and instructed Smith to cooperate.

While returning to the kitchen, Hulse, still upset with Smith, muttered to himself, "What a waste of human sperm!" Though audible, Hulse mumbled the remark under his breath and out of earshot of Smith, intending that it be heard by no one. Unexpectedly, however, Hulse's statement was overheard by another resident who was in the kitchen, which was around the corner from the area where Hulse had made the remark.

The resident, uncertain about whether he had correctly heard the remark and guessing it had been made in reference to Smith, pressed Hulse for a clarification. Hulse confirmed the resident's suspicions, confessing what he had said and about whom. Unfortunately, the resident then told Smith, who became very upset. After being told of Smith's anger, Hulse approached him to apologize. The apology was not well received. Smith had to be physically restrained from striking Hulse. Smith later reported the incident to a supervisor and also filed a complaint against Hulse.

As a result of the incident, Boys Ranch placed Hulse on a two-week, paid suspension effective September 5, 1991. A Boys Ranch official ultimately advised Hulse that he had the option of resigning by September 18, 1991, or being terminated. Hulse chose to resign.

Hulse applied for job insurance benefits with Job Service. A claims deputy held that Hulse was not entitled to benefits because he was discharged for reasons constituting misconduct under NDCC § 52–06–02. Hulse appealed and a hearing was held before a Job Service appeals referee. The referee reversed the determination of the claims deputy, concluding that Hulse's remark "was an isolated case of negligence and may not be deemed as misconduct."

Boys Ranch then appealed to the Executive Director of Job Service. The Director reversed the referee's decision, concluding on review of the record that:

"The Dakota Boy's [sic] Ranch Association is a licensed child care facility. In this setting, the employer has a right to

expect their workers to exhibit a behavior which would not be detrimental to the emotions of children in the facility who are in their care.

"[Hulse] admits that he made the remark about [Smith]. Although [he] was given an opportunity to resign, it was brought about because of an act of misconduct by clearly violating [Boys Ranch] personnel policy standards." [1]

Having exhausted his administrative remedies, Hulse appealed to the district court. The district court summarily affirmed Job Service's final decision denying benefits.

Hulse now appeals to this court, arguing that the facts and circumstances of this case do not support a finding that his isolated statement constitutes benefit-disqualifying misconduct under NDCC § 52–06–02. Job Service, asserting otherwise, claims applicable case law requires that we affirm the denial of unemployment compensation benefits. For the reasons explained below, we agree with Hulse.

■ "[W]hen an administrative agency decision is appealed to this court from a district court, we review the final decision of the agency and not that of the district court." *Hins v. Lucas Western*, 484 N.W.2d 491, 494 (N.D.1992). Section 28–32–19, NDCC, governs the scope of our review of administrative agency decisions. The determination of whether a person's behavior constitutes misconduct is a mixed question of fact and law. *Hins*, 484 N.W.2d at 495; *Marion v. Job Service*

*North Dakota*, 470 N.W.2d 609, 611–12 (N.D.1991). Our review of a mixed question of fact and law involves a determination of whether the evidence supports the agency's findings of fact and, in turn, whether those findings of fact sustain the agency's conclusion regarding misconduct. *Marion, supra; Medcenter One, Inc. v. Job Service North Dakota*, 410 N.W.2d 521, 524 (N.D.1987). If confronted with disputed facts, we defer to the agency's factual conclusions and consider only whether a reasoning mind could have reasonably determined that the factual conclusions were proved by a preponderance of the evidence. *Marion, supra.* But, where, as here, the agency's conclusion of law regarding misconduct is based on undisputed facts and contradictory inferences cannot reasonably be drawn from the undisputed facts, we review that conclusion anew. *Id.* Thus, we review the agency's legal conclusion anew, and the dispositive issue is whether Hulse's remark constitutes disqualifying misconduct as a matter of law.

NDCC § 52–06–02(2) declares that a person who has been discharged for misconduct in connection with that person's latest employment is disqualified from receiving unemployment compensation benefits. The term "misconduct" is not statutorily defined, but we have maintained for nearly a decade that misconduct, for purposes of NDCC § 52–06–02(2), is:

"[C]onduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or

---

**1.** Hulse alleges that portions of the Boys Ranch personnel policy manual, appended by Boys Ranch to its letter to the Executive Director requesting an appeal and allegedly containing the personnel policy standards which were relied upon by the Executive Director, were received and considered in violation of NDCC § 28–32–12.1(5), (7). He complains that the manual was not submitted as evidence to the appeals referee and that he was not given notice by Boys Ranch or Job Service when the Executive Director later received this alleged "new evidence," as required by NDCC § 28–32–12.1. Therefore, Hulse maintains, the manual was ex parte correspondence which the Executive Director was forbidden to consider and which, upon receipt, entitled him to notice and an opportunity to respond.

Job Service responds that Hulse is precluded from raising these issues because he did not raise them in district court. We agree. *See, e.g., Caldis v. Bd. of County Comm'rs, Grand Forks County*, 279 N.W.2d 665, 667 (N.D.1979). In addition, because we are reversing the order affirming Job Service's denial of unemployment compensation benefits, we need not consider the merits of Hulse's assignments of error. However, we remind Job Service that NDCC § 28–32–07 requires that the agency not avail itself of any competent and relevant information or evidence which was not previously presented at a formal hearing until it sends to all parties of record a copy of that information or evidence.

disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." *Perske v. Job Service North Dakota*, 336 N.W.2d 146, 148–49 (N.D.1983) [quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941)].

Subsection two, with its common law definition of misconduct, is, like each of the other benefit-disqualifying provisions of NDCC § 52–06–02, an exception to this state's remedial unemployment compensation laws. *Cf. Newland v. Job Service North Dakota*, 460 N.W.2d 118, 121 (N.D. 1990). *See also Dalton Brick & Tile Co. v. Huiet*, 102 Ga.App. 221, 115 S.E.2d 748, 750 (1960) ["[P]rovisions ... providing for disqualification of benefits constitute a list of exceptions to the general grant of such benefits."]. Because benefit-disqualifying provisions are exceptions, courts generally construe them narrowly or strictly. *See Warmington v. Employment Security Dept.*, 12 Wash.App. 364, 529 P.2d 1142, 1144 (1974); *Johnson v. Ford Motor Co.*, 289 Minn. 388, 184 N.W.2d 786, 791 (1971); *Adelsman v. Northwest Airlines, Inc.*, 267 Minn. 116, 125 N.W.2d 444, 449 (1963) [quoting *Nordling v. Ford Motor Co.*, 231 Minn. 68, 76, 42 N.W.2d 576, 581 (1950)];

*Pickman v. Weltmer*, 191 Kan. 543, 382 P.2d 298, 304 (1963); *Huiet, supra; Cf. Rocky Mountain Oil & Gas Ass'n v. Conrad*, 405 N.W.2d 279, 283 (N.D.1987); *Minn. Life & Health Ins. Guaranty Ass'n v. Dept. of Commerce*, 400 N.W.2d 769, 773 (Minn.App.1987); *In re Oakgrove*, 371 N.W.2d 69, 71 (Minn.App.1985); 3 N. Singer, Sutherland Statutory Construction, § 60.01 (5th Ed.1992) ["[E]xceptions to remedial legislation are strictly construed."].

■ However, exceptions must also be construed sensibly because we are required to interpret provisions of the North Dakota Century Code with a view to effecting their objectives. NDCC § 1–02–01; Sutherland Stat.Constr. § 60.01. In the context of our unemployment compensation laws, we must effectuate dual objectives. The primary objective, declared at NDCC § 52–01–05,[2] is to "soften the harsh impact of involuntary unemployment." *Newland*, 460 N.W.2d at 121. We achieve that objective by liberally construing the beneficent provisions of our unemployment compensation laws in favor of the employee. *Id.*

■ The primary objective is tempered by a competing objective, declared at section 52–06–02, of protecting employers "from quits that have nothing to do with the employer or the employment," and from dismissals based upon employee "misconduct." *Id.* Thus, while "the Legislature, in enunciating a public policy to provide unemployment compensation, intended to strike a balance between the rights" of the employee and the rights of the employer, that balance should "favor [ ] the employee." *Id.* We achieve that goal by narrowly, but reasonably, construing the disqualifying provisions of section 52–06–02. All that really means is that an employee should be disqualified for misconduct only when the facts and circumstances of a case

2. NDCC § 52–01–05 says:
   "Involuntary unemployment creates a hardship on the unemployed worker and his family and leads to a state of economic insecurity. Relief from problems of involuntary unemployment imposes a statewide burden of serious consequence to the people of the state of North Dakota which can best be met by unemployment insurance for the working man who becomes unemployed through no fault of

his own. The legislative assembly, therefore, declares that the public good and general welfare of the citizens of the state requires that for laboring people genuinely attached to the labor market there be a systematic and compulsory setting aside of financial reserves to be used as compensation for loss of wages during periods when they become unemployed through no fault of their own."

"come within the clear meaning of the words used in the provisions" of section 52–06–02, *Pickman,* 382 P.2d at 304, and, consequently, within the clear meaning of the language contained in our definition of misconduct.

■ Our holdings in analogous cases are illustrative. They establish that, under our definition of misconduct, an isolated episode of poor judgment constitutes disqualifying misconduct under NDCC § 52–06–02(2) only if the facts and circumstances of the case require it. *Tehven v. Job Service North Dakota,* 488 N.W.2d 48 (N.D.1992); *Hins,* 484 N.W.2d at 496; *Blueshield v. Job Service North Dakota,* 392 N.W.2d 70, 73 (N.D.1986); *Schadler v. Job Service North Dakota,* 361 N.W.2d 254, 257 (N.D.1985). Accordingly, we must carefully scrutinize the facts and circumstances of this case to determine whether Hulse's slip-of-the-tongue (1) was made in willful or wanton disregard of Boys Ranch's interests; or (2) was so carelessly or negligently made that it amounts to a willful or wanton disregard of Boys Ranch's interests; or (3) was made with wrongful intent or evil design; or (4) shows Hulse intentionally and substantially disregarded Boys Ranch's interests or his own duties and obligations. Absent evidence of culpability rising to one of these rigorous levels, one episode of poor judgment does not constitute misconduct.

■ First, we believe it is obvious Hulse neither willfully nor wantonly disregarded Boys Ranch's interests in properly attending to its residents. Hulse intended that the remark be heard by no one; it was not Hulse's objective to abuse or belittle Smith, or to disrupt the status quo. Moreover, the remark was not directed to Smith or anyone else in a face-to-face confrontation. *Compare with Ideker v. LaCrescent Nursing Center, Inc.,* 296 Minn. 240, 207 N.W.2d 713 (1973); *Unemployment Compensation Bd. of Review v. Tumolo,* 25 Pa.Cmwlth. 264, 360 A.2d 763 (1976). No disruption would have been created by Hulse's mumbling to himself, but, unfortunately, the remark was overheard and then repeated to Smith by a resident whom Hulse neither saw nor otherwise knew was standing nearby when he said it. Consequently, the impact of the remark on Smith was somewhat attenuated. Accordingly, we are unable to discern a willful or wanton desire on Hulse's part to subvert the interests of Boys Ranch.

Second, and for many of the same reasons, Hulse's utterance, though clearly careless or negligent, cannot be said to have been so careless or negligent to amount to a willful or wanton disregard of Boys Ranch's interests. On this point, we again emphasize that Hulse made the remark under his breath, and out of earshot of all but one unexpected resident. Nothing in the record suggests that Hulse's negligence was willful. We, therefore, are not convinced Hulse's negligence amounts to willful or wanton disregard.

Third, it is evident from these same facts that Hulse harbored no wrongful intent or evil design as he muttered the remark. Hulse's remark and attempt to rectify the situation lend support to this conclusion. Finally, having found no "willful or wanton disregard" or "wrongful intent" or "evil design," we also find no intentional and substantial disregard by Hulse of the interests of Boys Ranch or of his own obligations or duties.

When the conduct at issue is an isolated incident, "the connection between the conduct and the impact or potential impact on the employer's interests must be especially close." *Hins,* 484 N.W.2d at 496. This inadvertent sotto voce utterance is not such conduct. To the contrary, we believe Hulse's conduct is fairly characterized as an inadvertency or act of ordinary negligence in an isolated instance.

Accordingly, under the facts and circumstances of this case, Hulse's behavior does not meet any of the four criteria of culpability specified in the definition of misconduct. It follows then that those same facts and circumstances distinguish this case from the cases Job Service argues support its contention that Hulse's isolated episode of bad judgment constitutes misconduct,

namely *Blueshield,* 392 N.W.2d 70; *Schadler,* 361 N.W.2d 254; *Ideker* 207 N.W.2d 713; and *Tumolo,* 360 A.2d 763.[3]

We do not condone Hulse's behavior; it was patently unprofessional. But, he paid the price; he lost his job. We conclude that Hulse should not be further penalized by the denial of unemployment compensation benefits, because his behavior does not constitute disqualifying misconduct. Indeed, this is a case where, "because of the clarity of the particular facts and indisputability of the inferences drawn from those facts, ... we can determine that [Hulse's] conduct ... does not constitute 'misconduct' as a matter of law." *Blueshield,* 392 N.W.2d at 73.

Accordingly, we reverse both the agency's decision and the district court's judgment affirming the denial of benefits and remand to Job Service for proceedings consistent with this opinion.

VANDE WALLE, MESCHKE and JOHNSON, JJ., concur.

ERICKSTAD, Chief Justice, specially concurring.

I respectfully specially concur. Because of what is said in the last sentence of the next to the last paragraph of the opinion, I am compelled to comment lest it be misinterpreted to mean that the discharge was not justified.

If the mission of Dakota Boys Ranch Association is to be achieved, it cannot be denied that very high standards must be maintained at all times and under frustrating circumstances by its employees who work with troubled youth. It follows that, although the discharge may have been necessary to maintain the mission of Boys Ranch, it was not sufficiently egregious to deprive the frustrated counselor of his job benefits, especially as it was not a part of a series of acts, but was only a onetime occurrence.

---

**3.** The same holds true for our holdings in the recent "isolated instances" cases of *Tehven v. Job Service North Dakota,* 488 N.W.2d 48 (N.D. 1992) [single instance of breach of confidentiality evidenced intentional and substantial disregard of standards of behavior employer had right to expect of employee] and *Hins v. Lucas Western,* 484 N.W.2d 491 (N.D.1992) [insufficiently close connection between single instance of physical force by one co-employee against another co-worker and impact on employer's interests].