**Susan KACKMAN, individually and as Personal Representative of the Estate of Richard L. Kackman, Appellant,**

v.

**NORTH DAKOTA WORKERS' COMPENSATION BUREAU, Appellee.**

Civ. No. 910462.

Supreme Court of North Dakota.

July 28, 1992.

Bruce H. Carlson (argued), of McNair, Larson & Carlson, Ltd., Fargo, for appellant.

Dean J. Haas (argued), Asst. Atty. Gen., Workers' Compensation Bureau, Bismarck, for appellee.

LEVINE, Justice.

Susan Kackman, individually and as personal representative of the estate of Richard Kackman, appeals from a district court judgment affirming a decision by the Workers Compensation Bureau denying her benefits. We affirm.

In January and March 1986, Susan's husband, Richard, an employee of Midwest Bean Company, suffered work-related injuries to his lower back, for which he received disability benefits from the Bureau. On April 21, 1987, Richard sustained a non-work related back injury. On October 7, 1987, Richard committed suicide and Susan submitted a claim to the Bureau for death benefits, asserting that Richard's work-related injuries caused him to commit suicide.

At an administrative hearing on Susan's claim, two experts testified about the relationship between Richard's work injuries and his suicide. Dr. R.P. Ascano, a psychologist, testified that Richard's chronic illness from his work-related injuries caused his depression, which caused him to commit suicide. Dr. Joseph T. Smith, a law-trained psychiatrist, concluded "with reasonable medical certainty [that] the stress caused by [Richard's] psychotic Delmional (Paranoid) Disorder was the substantial factor contributing to his suicide and that the injuries and back pain he had experienced in the previous year and a half were coincidental rather than causative."

An administrative hearing officer recommended:

"Considering all of the evidence and testimony, it seems more likely that the depression (the Claimant's state of mind—discouragement or melancholy) was caused by circumstances occurring on or after the Midwest Bean Company work injuries. There is simply not enough evidence of (and too much speculation about) emotional agony, suspicions, mistrust, paranoid delusions, etc. before that time.

"The evidence shows, by the greater weight of the evidence, however, that the discouragement or melancholy (depression) experienced by the Claimant prior to taking his life was not evidenced by a psychosis or some physical damage to the brain. Rather, the evidence indicates that to escape the pain and despair of injury, while still possessed of the capacity to know that his defiant act would result in death, the Claimant committed suicide. There is simply not sufficient evidence other than to simply show a derangement sufficient to disable the Claimant from exercising sound discretion so as to control his compulsion. In fact, the suicide seems to be directly related to the Claimant's brooding over his injuries and their consequences, among other things."

The hearing officer thus agreed with Dr. Ascano's view that the suicide was related to Richard's work injuries. But, the hearing officer concluded that the suicide was not a compensable injury under Section 65–01–02(7), N.D.C.C.,[1] because there was insufficient evidence that Richard's depression resulted in psychosis or physical damage to the brain. Under either the "New York" rule or the "English" rule for determining the existence of a causal relationship between work injuries and a suicide, those symptoms are necessary to establish compensability. *See* fn. 2, *infra*. The

---

1. At the time of Richard's suicide Section 65–01–02(7), N.D.C.C., provided:

"'Compensable injury' means an injury by accident arising out of and in the course of employment including an injury caused by the willful act of a third person directed against an employee because of his employment, but such term shall not include an injury caused by the employee's willful intention to injure himself or to injure another...."

The definition of "compensable injury" was amended in 1989. Section 65–01–02(8)(b)(1) provides:

"8. 'Compensable injury' means an injury by accident arising out of and in the course of employment.

\* \* \* \* \* \*

"b. The term does not include:

"(1) An injury caused by the employee's willful intention to injure or kill himself, herself, or another, which includes those instances where the injury or aggravation thereof results from the employee's suicide or attempted suicide."

hearing officer rejected the less demanding "chain-of-causation" test, which would have allowed compensation for the suicide if Richard's work injuries directly resulted in his losing normal judgment and being dominated by a disturbance of the mind, thus causing him to commit suicide.

The Bureau denied Susan's claim. But, the Bureau rejected the hearing officer's recommended finding that the suicide was caused by the work-related injuries and concluded, instead, that there was "no cause and effect relationship between [Richard's] work injuries and [his] suicide." The district court affirmed the Bureau's decision and this appeal followed.

Susan argues that the Bureau improperly rejected the hearing officer's recommended findings because the Bureau's decision did not sufficiently explain why it did not follow the hearing officer's recommendations. She contends the Bureau's decision was not supported by a preponderance of the evidence.

 When an administrative agency decision is appealed to a district court and then to this court, we review the agency decision and look to the record compiled before the agency. *E.g, Christianson v. North Dakota Workers Compensation Bureau*, 470 N.W.2d 613 (N.D.1991). We must affirm an administrative agency decision unless its findings of fact are not supported by a preponderance of evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. Section 28–32–19, N.D.C.C.; *Marion v. Job Service North Dakota*, 470 N.W.2d 609 (N.D.1991). In reviewing the factual basis of an agency's decision, we do not make independent findings of fact or substitute our judgment for that of the agency. *Marion, supra.* Instead, we determine whether a reasoning mind reasonably could have determined that the agency's factual determinations were proved by the weight of the evidence from the entire record. *Marion, supra.*

 If an administrative agency rejects a hearing officer's recommendations,

the agency must adequately explain its rationale for not following the hearing officer's recommendations. *Marion, supra; Schultz v. North Dakota Department of Human Services*, 372 N.W.2d 888 (N.D. 1985). An agency may reject a hearing officer's recommendations on questions affecting credibility. *Schultz, supra.*

In this case, Dr. Smith and Dr. Ascano expressed dissimilar opinions about the relationship of Richard's work injuries to his suicide. Dr. Smith, a law-trained psychiatrist, concluded that Richard suffered from delusions and a paranoid disorder before he sustained his work injuries and that those preexisting delusions caused Richard to commit suicide. Dr. Smith concluded that Richard's work injuries and back pain were coincidental and did not cause Richard to commit suicide. Dr. Smith's report summarized his findings:

"During the summer of 1987, [Richard] began developing florid symptoms of Delusional (Paranoid) Disorder, a condition that had been less symptomatic, but nevertheless developing, over a period of years. There is strong evidence that he was having interpersonal difficulties likely due to a developing paranoid disorder before he was terminated from his employment at K–Mart in 1982. There is also substantial evidence according to his widow that he began developing serious interpersonal difficulties with the other employees at Midwest Bean a year before his accident in January of 1986. He suffered an injury in his roofing business in April of 1987 and following that began to develop more florid symptoms of Delusional (Paranoid) Disorder, wherein he believed that the government was watching him; that his wife was having a sexual affair with his best friend; that he was under surveillance; and that the sheriff was parked at the end of street on his way to get him."

Dr. Ascano, a psychologist, conducted a "psychological autopsy" and concluded that Richard's work-related injuries caused chronic illness, resulting in depression, which caused him to take his life. Dr. Ascano's psychological autopsy stated:

"Chronic illness, strain ability to cope, due to the chronicity of the medical problem the Deceased experienced emotional distress such as depression, anxiety, which tax excessively his capacity to sustain psychological stability. Depression is a common and often disabling reaction to chronic illness. Many of the physical signs of depression such as fatigue, sleeplessness, appetite disturbance, or weight loss may also be symptoms of the medical condition itself.

"The Deceased was experiencing financial stress, personal humiliation due to his sexual dysfunction and having to see a psychologist and his inability to be 'a good father' due to his physical incapabilities to play with his children, negatively impacted his self worth."

In rejecting the hearing officer's findings, the Bureau concluded "as a factual matter that there is no cause and effect relationship" between Richard's work injuries and his suicide. The Bureau concluded that Dr. Ascano's opinion was based on an erroneous conclusion that because the work injuries occurred prior to the suicide and Richard appeared to be living normally prior to the work injuries, the work injuries must have caused Richard to commit suicide. The Bureau said that Dr. Ascano completely ignored the delusional thought patterns that Richard exhibited before his suicide. The Bureau found that Dr. Ascano's opinion was not credible. Instead, the Bureau found that there was sufficient evidence in the record to credit Dr. Smith's diagnosis that Richard's condition fit a "delusional (paranoid) disorder" profile which was present before his work injuries and which caused Richard to commit suicide. The Bureau explained that the appearance that Richard was living a normal life before his work injuries was not persuasive because, as Dr. Smith indicated, individuals who suffer from delusional thoughts are usually able to hide their condition and there was evidence of Richard's preexisting delusional behavior.

The Bureau thus rejected Dr. Ascano's opinion and credited Dr. Smith's opinion. Consequently, the Bureau also rejected the hearing officer's findings to the extent they rested on Dr. Ascano's opinion. The Bureau may reject a hearing officer's findings on questions of credibility. *Schultz, supra. Cf., Wanner v. Getter Trucking, Inc.,* 466 N.W.2d 833 (N.D.1991) [underlying basis of expert's opinion goes to credibility of opinion giver, which the trier-of-fact may assess]. We believe the Bureau adequately explained why it rejected the hearing officer's recommendation. We next consider the interrelated issue of whether or not Dr. Smith's opinion was supported by a preponderance of evidence.

Dr. Smith's diagnosis was based, in part, upon evidence that Richard had a history of interpersonal problems before his work injuries. There was evidence that Richard suffered from emotional deprivation during his childhood, that he carried a baseball bat in his car for use when he got into fights and that, according to a co-employee at Midwest Bean, he was "touchy" and had a "very bad temper" before his work injuries. Dr. Smith also testified that individuals with delusional thoughts are usually able to hide their condition. That evidence, in addition to Richard's belief that his wife was unfaithful to him, that a co-employee intentionally injured him and that the government was watching him, led Dr. Smith to conclude that Richard's behavior fit the classic "delusional (paranoid) disorder" profile and that that disorder caused him to commit suicide.

Based on the evidence from the entire record, we believe that a reasoning mind could have reasonably determined that Dr. Smith's opinion was supported by the weight of the evidence. Accordingly, we conclude that the Bureau's finding that there was no cause and effect relationship between Richard's work injuries and his suicide is supported by a preponderance of the evidence. The Bureau's findings support its conclusions of law, and its decision is supported by its conclusions of law.[2]

2. The Bureau also urges us to adopt the "New York" rule for determining whether or not a

We therefore affirm the district court judgment.

ERICKSTAD, C.J., and VANDE WALLE, JOHNSON and MESCHKE, JJ.

work injury caused a suicide. The "New York" rule requires a psychosis or some physical damage to the brain. *See* Annot., *Suicide as Compensable Under Workmen's Compensation Act,* 15 A.L.R.3d 616, § 5 (1967); 1A Larson, Workmen's Compensation Law, § 36.30 (1990). Susan argues that we should adopt the less demanding "chain-of-causation" test which allows compensation for a suicide if a work injury directly causes the employee to become devoid of normal judgment, causing the suicide. *Id.*

Because we conclude that the Bureau's finding that there was no cause and effect relationship between Richard's work injuries and his suicide is supported by a preponderance of the evidence, Susan's claim is not compensable under any of the causation tests. Accordingly, we need not decide which causation test is applicable under the former provisions of Section 65–01–02(7), N.D.C.C.